IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CT-3218-FL

| | | |
|---|---|---|
| DOMINIQUE LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ROBERT C. LEWIS, KENNETH | ) | |
| LASSITER, YVONNE HALE, HATTIE | ) | |
| B. PIMPONG, EDWARD B. THOMAS, | ) | |
| AMY B. ALPERSTEIN, BRANDON | ) | |
| MILES, and ERIC URIETA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The matter is before the court on defendants' motion for summary judgment (DE 62)
pursuant to Federal Rule of Civil Procedure 56. Also before the court is plaintiff's motion for a
settlement conference (DE 72). The issues raised have been fully briefed and are ripe for
adjudication. For the following reasons, the court grants in part and denies in part defendants'
motion for summary judgment. The court denies plaintiff's motion for a settlement conference.

**STATEMENT OF THE CASE**

On September 9, 2013, plaintiff, a state inmate, filed this civil rights action, *pro se,* pursuant
to 42 U.S.C. § 1983, against defendants Sergeant Alperstein ("Alperstein"), Y. Hale ("Hale"),
Kenneth Lassiter ("Lassiter"), Robert C. Lewis ("Lewis"), Correctional Officer Miles ("Miles"),
Hattie B. Pimpong ("Pimpong"), Edward B. Thomas ("Thomas"), and Correctional Officer Urieta
("Urieta"). In his complaint, plaintiff alleged that the disciplinary procedures for several of his
disciplinary convictions violated his rights to due process pursuant to the Fourteenth Amendment

to the United States Constitution and that his prison conditions in administrative segregation violated the Eighth Amendment to the United States Constitution. Plaintiff also alleged that defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Plaintiff subsequently filed a motion to amend his complaint and a motion to appoint counsel.

On May 22, 2014, the court granted plaintiff's motion to amend and denied plaintiff's motion to appoint counsel. In the same order, the court conducted a frivolity review of plaintiff's action and dismissed without prejudice plaintiff's Eighth Amendment claim arising out of alleged missing snack bags. The court also dismissed without prejudice for failure to exhaust administrative remedies all claims plaintiff asserted relating to Warren and Tabor Correctional Institutions which arose subsequent to the filing of this action. The court allowed plaintiff to proceed with his remaining claims.

On July 28, 2014, plaintiff filed a motion for leave to file a second supplemental complaint to initiate a class action alleging that prison officials at Tabor were violating his right to access the courts and right to be free from cruel and unusual punishment. Plaintiff next filed a motion to appoint counsel, a motion to strike defendants' answer, a motion for entry of default, and a motion for a temporary restraining order. On September 18, 2014, the court entered an order denying plaintiff's request to proceed as a class action and denying as futile plaintiff's motion for leave to file a second supplemental complaint. The court also denied plaintiff's motion to appoint counsel and directed defendants to respond to plaintiff's motions to strike, motion for entry of default, and motion for a temporary restraining order. Defendants subsequently complied with the court's order and filed the responses as directed.

2

On October 1, 2014, plaintiff filed a motion for return of exhibits and then filed a motion to compel discovery. On November 6, 2014, the court entered an order denying plaintiff's motion for entry of default, motion for a temporary restraining order, and motion to strike. The court granted plaintiff's motion for the return of his exhibits and denied as premature plaintiff's motion to compel. Plaintiff subsequently filed a second motion to compel discovery. On March 11, 2015, the court entered an order granting in part and denying in part plaintiff's motion to compel discovery. The court also extended the dispositive motion deadline at defendants' request.

On April 21, 2015, defendants filed the instant motion for summary judgment, arguing that plaintiff is unable to establish a constitutional violation. Defendants attach to their motion the following documents: plaintiff's Offender Information Report; plaintiff's April 6, 2010, May 11, 2010, April 26, 2011, September 6, 2011, March 7, 2012, October 20, 2012, February 7, 2013, and April 22, 2013, disciplinary packages; the North Carolina Department of Public Safety's Policy and Procedures regarding inmate disciplinary proceedings; and affidavits from defendants Thomas, Alperstein, and Urieta. Defendants also filed a motion for a protective order. Plaintiff responded to defendants' motion for summary judgment and attached the following documents to his response: plaintiff's affidavit; medical records; three witness statements; and excerpts from the Health Services Policy and Procedures Manual. Plaintiff also filed a motion for a temporary restraining order and a motion for discovery.

On June 11, 2015, the court entered an order denying plaintiff's motion for a temporary restraining order and denying as moot plaintiff's motion for a protective order. On January 4, 2016, plaintiff filed a motion for a settlement conference. The motion was fully briefed.

**STATEMENT OF THE FACTS**

Except as otherwise noted below, the undisputed facts are as follows. Plaintiff's cause of action arises out of several disciplinary proceedings regarding incidents occurring at Central Prison on March 19, 2010, April 18, 2010, April 9, 2011, August 11, 2011, February 2, 2012, September 14, 2012, December 29, 2012, and January 6, 2013. The facts pertaining to each of these disciplinary incidents are set forth in turn below.

      a.      March 19, 2010 and April 18, 2010

On March 20, 2010, DPS staff administratively charged plaintiff with a C-8 disciplinary offense for wrongfully taking state property and with a D-3 disciplinary offense for possession of contraband. (Def.s' Ex. B, pp. 6, 7; Ex. J.) Both disciplinary charges were dismissed. (Id. p. 3.) Plaintiff states that during the period of investigation for these charges, he was moved to the administrative segregation unit and denied a bed roll, hygiene items, clothes, personal property, and medication for a period of four days. (Compl. p. 11.)

Next, on April 24, 2010, DPS staff administratively charged plaintiff with an A-12 disciplinary offense for the manufacture of an alcoholic beverage, a D-3 disciplinary charge for the possession of contraband not constituting a threat of escape or a danger of violence, and a D-7 disciplinary charge for possessing excess clothing/linen/sheets. (Def.s' Ex. C, pp. 1, 7; Ex. J.) Each of the three disciplinary charges ultimately were dismissed "[a]fter review of the package and speaking with supervisory staff[.]" (Id. p. 3.) Plaintiff states that during the investigation period for these charges, he was moved to the segregation unit and denied a bed roll, hygiene items, clothes, personal property, and medication for a period of four days. (Compl. p. 11.)

b.      April 9, 2011, Incident

On April 10, 2011, DPS staff administratively charged plaintiff with an A-12 disciplinary

offense and a C-8 disciplinary offense for wrongfully taking public property.  (Def.s' Ex. D, pp. 1,

8; Ex. J.)  On April 26, 2011, the disciplinary hearing officer ("DHO") conducted a hearing on the

charges, and set forth the following summary of the record:

> Sgt. Clark states that on 4/9/11 at approx. 1325 hrs., he searched the
> inmate's cell and found him to be in possession of six hot dogs
> wrapped in plastic inside of a white paper bag.  He also discovered
> four sixteen ounce sprite bottles filled with what appeared to be
> homemade alcohol.  He also found a sixteen ounce orange juice
> bottle with a small amount of the alcoholic liquid inside.  He states
> that when the bottles were opened, they had the strong odor of
> alcohol.  The inmate made a written statement asking for an alcoholic
> test to be done testing for the presence of alcohol and or the level of
> alcohol.  He also stated that he wanted a statement from Sgt. Manley
> concerning what she saw and concluded from the evidence that Sgt.
> Clark brought to the first floor office while she was present.  The
> inmate stated no comment when he was asked to explain what took
> place during the incident.  Sgt. Manley addressed in her report that
> she was not present when the contraband was discovered however, as
> the investigating officer she did inspect the contraband and found the
> containers of liquid to emit the strong odor of alcohol such as
> homemade wine would have.

(Id. p. 3.)  Based upon the reporting party's statement and the evidence presented, the DHO found

plaintiff guilty of both charges.  (Id.)  The DHO sentenced plaintiff to 30 days of segregation,

50 hours of extra duty, and 4 months limited draw for his A-12 conviction.  For his C-8 disciplinary

conviction, the DHO sentenced plaintiff to 30 days segregation, 30 hours extra duty, and two months

of limited draw.  (Id. p. 1.)  Plaintiff states that he was moved to the administrative segregation unit

without a bed roll, hygiene items, clothes, personal property, and medication for a period of three

days.  (Compl. p. 10.)

5

c.     August 11, 2011, Incident

On August 15, 2011, DPS staff administratively charged plaintiff with an a B-1 disciplinary offense for the possession of an instrument to aid in an assault, insurrection, or riot.  (Def.s' Mem. Exs. E p. 6, J.)  This disciplinary charge ultimately was dismissed on appeal.  (Id. p. 11.)

In the course of the disciplinary proceedings for the B-1 charge, plaintiff states that he was transferred to the administrative segregation unit for the time period of September 6, 2011, through September 27, 2011.  (Compl. p. 9.)  Plaintiff states that while on the administrative segregation unit, "feces and urine was all over the block and the officers wouldn't allow the janitor to clean it up.  Other prisoners would go into the recreation cages and throw feces and urine on each other, daily when allowed to rec[reation.]"  (Id.)

d.     February 2, 2012, Incident

On February 16, 2012, DPS staff administratively charged plaintiff with an A-12 disciplinary offense.  (Def.s' Mem. Ex. F, p. 5; Ex. J.)  Plaintiff refused to enter a plea as to the charge.  (Id. p. 2.) On March 7, 2012, the DHO conducted a disciplinary hearing for the A-12 charge and set forth the following summary of the record:

> Sgt. Crosby states that on 2/2/12 at approx. 0740 hrs   Officer Blacknall informed him that inmate Lee had something on his person that he had detected during a pat search.  They moved the inmate to a private area a strip searched him at which time they discovered he was concealin[g] homemade wine between his legs.   Officer Blacknall states that he did pat the inmate down and have reason to complete a complete search and that homemade wine was discovered. The inmate made a written statement and he states that a procedural error was in play and the write up should be dismissed.  The inmate refused to comment verbally only stating "no comment."

(Id. p. 2.) Based upon multiple staff witnesses and the evidence provided at the hearing, the DHO found plaintiff guilty of the A-12 charge.  (Id.)  The DHO sentenced plaintiff to the following:

6

60 days of segregation; 50 hours of extra duty; and 6 months of limited draw. (Id. p. 1.) Plaintiff

then appealed the disciplinary conviction, and the conviction was upheld on appeal. (Id. p. 10.)

Following his disciplinary conviction, plaintiff states that he was transferred to the

segregation unit without a bed roll, hygiene items, clothes, personal property, and medication for

a period of three days. (Compl. p. 8.) Plaintiff also states that he was subjected to "freezing"

temperatures during this time period. (Id.)

e.     September 4, 2012, Incident

On September 15, 2012, DPS staff administratively charged plaintiff with an A-18

disciplinary offense for knowingly making a false oral or written allegation about a staff member,

that, if true, could expose the staff member to criminal liability. (Id. Ex. G, p. 7; Ex. J.) Plaintiff

pleaded not guilty to the disciplinary charge. (Id. p. 2.)

On October 2, 2012, the DHO conducted a disciplinary hearing on the charges and set forth

the following summary of the record:

> Capt. Hale states that on 9/14/12 at 0900 hrs she completed an
> investigation into allegations made by inmate Lee that he was
> assaulted by a staff member. She states that the allegations were fully
> investigated and there was evidence which indicated that inmate Lee
> provided false information about the assault. Inmate Lee made a
> written statement and requested a statement from officer Jeffereys.
> He states that he wanted to rely on his original statement that he was
> hit by staff in his rib area with utensils and officer Jeffereys
> witnessed the incident. The inmate's original statement was attached
> and he stated the same as noted above. Officer Jeffery's was
> interviewed by the I/O and he stated that he wanted to also maintain
> his original statement which was attached, he stated staff never

7

> assaulted the inmate.  He states that the utensils were handed to the
> inmate.

(Id. p. 2.)

Based upon the reporting party's statement and the evidence presented, the DHO found

plaintiff guilty of the charge.  (Id.)  The DHO sentenced plaintiff to 60 days of segregation, 50 hours

of extra duty, 6 months limited draw, and 180 days suspension of privileges for his A-12 conviction.

(Id. p. 1.)  On appeal, plaintiff's punishment was modified, and the limited draw penalty was

rescinded and plaintiff's suspension of privileges was reduced from 180 to 30 days.  (Id. p. 13.)

Plaintiff was transferred to the segregation unit, without a bed roll, hygiene items, personal property,

and medication for a period of three days.  (Compl. pp. 7-8.)  There was no ventilation in his cell

from October 7, 2012, until his release from segregation on December 3, 2012.  (Id. p. 8.)

      f.      December 29, 2012, Incident

On December 29, 2012, DPS staff administratively charged plaintiff with a C-6 disciplinary

offense for failure to report to a job facility.  (Compl. Ex. H, p. 3; Ex. J.)  The charge was dismissed

on February 25, 2013.  (Id. Ex. H, p. 1.)

Plaintiff states he was transferred to the segregation unit on December 29, 2012, and noticed

toxic fumes in the air.  (Id. p. 6.)  Plaintiff also states that he was subjected to "freezing"

temperatures and did not have a "bed roll (Blanket, sheets, [,] towel, [or] washcloth), hygiene items,

clothes, personal property, or medication for [four] days."  (Id.)  Plaintiff asserts that he continuously

asked the staff for such items, but his requests were denied.  (Id.)

      g.      January 6, 2013, Incident

On January 6, 2013, DPS staff administratively charged plaintiff with an A-3 disciplinary

offense for committing an assault on a staff member, a B-18 offense for threatening to harm or injure

a staff member, and a C-2 offense for using profane language. (Id. Ex. I, pp. 1, 6; Ex. J.) Defendant Alperstein, the investigating officer, states that she subsequently informed plaintiff of his rights as they pertained to the disciplinary process and provided plaintiff the opportunity to make a verbal or written statement. (Id. p. 5.) Plaintiff refused. (Id.) When Alperstein informed plaintiff that he was being charged with assault, plaintiff became irrate and cursed defendant Alperstein as she attempted to explain plaintiff's disciplinary rights to him. (Alperstein Aff. ¶ 3.) Defendant Alperstein considered plaintiff's irritation as a refusal to cooperate and a refusal of process. (Id. ¶ 4; Def.'s Mem. Ex. I, p. 5.) Plaintiff contests defendant Alperstein's represenations. (Compl. p. 4.) Plaintiff asserts that Alperstein never presented the charges to him in writing, and failed to provide him with a notice of his rights, notice of a disciplinary investigation, or the opportunity to make a statement or request evidence. Id. Plaintiff, however, admits that he did receive advanced notice of the charges. (Compl. p. 4.)

On January 22, 2013, the DHO conducted a disciplinary hearing and set forth the following summary of the record:

> Inmate advised of his rights and a summary was read. The inmate pled not guilty to the charges with a summary of the case; Officer Urieta states that on 1/6/13 at approx. 1045hrs inmate Lee stated while his trap door was open "F- - - You Mother F- - - - -! I'm going to f- - - you up when I ge[t] a chance." The inmate then reached through his food passage door grabbing the officer's left hand. The inmate refused to make a written statement. The inmate stated verbally that the incident never happened and the staff are lying.

(Def.'s Mem. Ex, I, p. 3.) Based upon the reporting party's statement and the evidence presented, the DHO found plaintiff guilty of all charges. (Id.) Plaintiff received 20 days of segregation, 50 hours of extra duty, and 2months limited draw for his A-3 disciplinary conviction. He received 20 days of segregation, 40 hours of extra duty, and 2 months of limited draw for his B-18 conviction,

9

and 20 days of segregation, 30 hours of extra duty, and 2 months of limited draw for his C-2 disciplinary conviction. (Id. p. 1.) Plaintiff subsequently filed an appeal, and his disciplinary convictions were upheld. (Id. p. 11.)

Plaintiff states that after he was transferred to the administrative segregation unit after receiving his January 6, 2013, disciplinary charges, he was "denied medical attention and adequate medical care." (Compl. p. 5.) Plaintiff also states that he was placed on a "filthy and unsanitary block" with "freezing air coming from the ventilation" and "toxic fumes in the air." (Id. pp. 5-6.) Plaintiff wrote several letters to prison officials regarding his prison conditions in administrative segregation. (See id. Exs. B-E.)

Plaintiff additionally states the following with respect to his medical care:

> I have a life threatening medical condition that requires daily medications in the form of pills and snack bag. Because I have been, still is and/or may still be, denied my medications, complications with my health has developed and as a result, I have been physically suffering and am at risk of future injury.

(Compl. pp. 11-12.) Specifically, plaintiff states that he is HIV positive and requires daily medication. (Pl.'s Aff. (DE 69) ¶¶ 5, 6; Pl.'s Resp. Ex. 2.) Plaintiff states that because he was prevented access to his medications for a period of 3-4 days each time he was transferred to the segregation until, he has developed a resistance to some of the medications used for his HIV medication therapy. (See Pl.'s Resp. Ex. 2.)

**DISCUSSION**

A.      Motion for Summary Judgment

      1.      Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. <u>Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. <u>Anderson</u>, 477 U.S. at 250.

      2.      Analysis

Defendants assert the affirmative defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009). The court first determines whether defendants violated plaintiff's constitutional rights.

11

a.      Disciplinary Convictions

Defendants assert that any claims arising out of plaintiff's March 19, 2010, and April 18,

2010, disciplinary proceedings are barred by the statute of limitations.  There is no federal statute

of limitations for actions brought under 42 U.S.C. § 1983.  Instead, the analogous state statute of

limitations applies.  Burnett v. Grattan, 468 U.S. 42, 49 (1984).  Specifically, the state statute of

limitations for personal injury actions governs claims brought under 42 U.S.C. § 1983.  See Wallace

v. Kato, 549 U.S. 384, 388 (2007).  North Carolina has a three-year statute of limitations for

personal injury actions.  N.C. Gen. Stat. § 1-52(5); see Brooks v.  City of Winston-Salem, 85 F.3d

178, 181 (4th Cir. 1996).

Although the limitations period for claims brought under section 1983 is borrowed from state

law, the time for accrual of an action is a question of federal law.  Wallace, 549 U.S. at 388; Brooks,

85 F.3d at 181.  A claim accrues when the plaintiff knows or has reason to know of the injury which

is the basis of the action.  Wallace, 549 U.S. at 391.  Further, an action that is barred by the statute

of limitations may be dismissed as frivolous under 28 U.S.C. § 1915.  See Eriline Co. S.A. v.

Johnson, 440 F.3d 648, 655-56 (4th Cir. 2006).

Here, the disciplinary proceedings arising out of the March 19, 2010, and April 18, 2010,

incidents concluded on April 6, 2010, and May 11, 2010, respectively.[1]  See (Exs. B and C, p. 1.)

Accordingly, the statute of limitations for these claims accrued, at the latest on April 6, 2010, and

May 11, 2010.   Plaintiff then had three years, or until April 6, 2013, and May 11, 2013, within

which to assert his claims arising out of his April 6, 2010, and May 11, 2010, disciplinary

proceedings.  Plaintiff signed his complaint on September 5, 2013, and filed it in this court on

---

[1]  Plaintiff did not appeal the dismissal of his disciplinary convictions.  See (Def.s' Mem. Exs. B, C.)

12

September 9, 2013. Because plaintiff filed this action after the expiration of the three-year statute of limitations, these claims are time-barred.

The court now turns to plaintiff's due process claims arising out of the remaining disciplinary proceedings. The Due Process Clause mandates several procedural safeguards before an inmate may be punished for violating prison disciplinary rules with the loss of protected liberty interest, such as earned good-time credit, or with deprivation of property. Wolff v. McDonnell, 418 U.S. 539, 557 (1974). These limited due process rights include advanced, written notice of the charges, written findings, and a limited right to call witnesses. See id. at 563-64. However, an inmate only is entitled to these procedural protections when the conviction results in the loss of statutory good-time credits or where some other liberty or property interest is at issue. Id. Additionally, the findings of a prison disciplinary board must be supported by some evidence in the record, Walpole v. Hill, 472 U.S. 445, 454-55 (1985), and be made by an impartial adjudicator. Wolff, 418 U.S. at 570-71.

Here, plaintiff's disciplinary convictions did not result in the loss of good-time credit. (Def.'s Mem. Exs. B-I.) In fact, plaintiff's August 18, 2011 and December 29, 2012, disciplinary charges were dismissed and resulted in no punishment. See (Ex. E, p. 11; H p. 1.) Plaintiff's remaining April 26, 2011, March 7, 2012, October 2, 2012, and January 22, 2013, disciplinary convictions, resulted in his assignment to administrative segregation, extra duty, suspension of visitation privileges, and limited draw, which do not implicate a constitutionally protected liberty interest. See Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (holding administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship such that due

13

process protections attach); <u>see also</u> <u>Chestnut v. Brown</u>, No. 3:11-1227-RMG-JRM, 2012 WL 3230663, at * (D.S.C. June 19, 2012) (finding no constitutional violation concerning custody placement or loss of privileges); <u>Bliss v. United States Attorney General</u>, No. 8:07-160-TLW-BHH, 2009 WL 3105257, at *5 (D.S.C. Sept. 23, 2009) (finding no due process protections where inmate lost only his job and telephone privileges). Thus, plaintiff failed to establish a due process violation arising out of his disciplinary proceedings.

Alternatively, plaintiff's disciplinary proceedings, which resulted in his April 26, 2011, March 7, 2012, October 2, 2012, and January 22, 2013, disciplinary convictions comported with both substantive and procedural due process. Plaintiff asserts that defendant Alperstein erroneously represented to the DHO that she provided plaintiff with written notice of his January 6, 2013, disciplinary charge on that date. (<u>See</u> Def.'s Mem. Ex. I, p. 6.) Even if true, plaintiff still may not base a due process claim on lack of notice of this charge because he admits in his complaint that he received notice of the charge on January 18, 2013, which was prior to the January 22, 2013, hearing. (Compl. p. 4.) Plaintiff further has not alleged any prejudice related to alleged inadequate notice. As for the remainder of the charges, the record reflects that plaintiff received advanced written notice of each of the charged offenses at issue. (<u>See</u> Exs D, p. 5; F, p. 5; G, p. 7.) Thus, the court finds that <u>Wolff's</u> written notice requirement was satisfied.

Plaintiff does not contest that he received written notice of the DHO's findings. Accordingly, the court moves to the third <u>Wolff</u> requirement-that the inmate have a limited right to call witnesses. Plaintiff states that his due process rights were violated because he was not permitted to obtain a witness statement from Sergeant Manley in advance of his April 26, 2011, hearing. (Def.s' Mem. Ex. D, p. 3.) Plaintiff requested that Manley provide a statement as to her conclusions

14

based upon her observation of the evidence. (Id.) Although she did not produce a written statement upon plaintiff's request, Manley, did set forth her opinion as to the evidence in her written investigation report. (Id.) Specifically, Manley stated in her report that the containers of liquid confiscated from plaintiff emitted "the strong odor of alcohol such as homemade wine would have." (Id.) The Fourth Circuit Court of Appeals has held that witness testimony may be disallowed by a DHO where the testimony would be irrelevant or cumulative. See Ward v. Johnson, 690 F.2d 1098, 1112-13 (4th Cir. 1982). Here, the duplicative testimony from Manley in the form of a separate written statement would have been unnecessarily cumulative. Thus, plaintiff failed to establish a due process violation.

On a related note, plaintiff contends that his due process rights were violated because Sergeant Manley participated in his April 2011 disciplinary proceedings as both a witness and investigative officer. To satisfy Wolff, the decision-making authority in any disciplinary proceeding must be impartial, not arbitrary and capricious. Wolff, 418 U.S. at 570-71. Likewise, the DOC requires that the DHO be "an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident." 28 C.F.R. § 541.8. These requirements were satisfied. The DHO who conducted plaintiff's hearing did not serve as the victim, witness, or investigator, and was not involved in the disciplinary incident. Thus, the record does not support a finding that plaintiff's disciplinary hearing was impartial, and the court finds that his due process rights were not violated.

Plaintiff's final claim pursuant to the third Wolff requirement is that prison officials did not permit him to make a written statement in support for his October 2, 2012, hearing. This claim,

15

however, is belied by the record. (Id. Ex. G, p. 2.) Thus, plaintiff again failed to establish a due process violation.

To the extent plaintiff contends that his due process rights were violated because he did not receive adequate notice of requests for any extensions of time, his claim is without merit. Notice of an extension of time is not a due process right set forth in Wolff. See Wolff, 418 U.S. at 557. Moreover, plaintiff has failed to establish that he suffered any detriment due to the alleged extensions of time. Thus, this claim lacks merit.

To the extent plaintiff alleges that defendant Pimpong was impartial in adjudicating his appeal, his claim lacks merit. Plaintiff makes only conclusory allegations of Pimpong's alleged impartiality. Such conclusory allegations are insufficient to establish a due process violation. See Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009) (citation omitted); see, e.g., White v. White, 886 F.2d 721, 723 (4th Cir.1989) (stating minimum level of factual support required).

To the extent plaintiff seeks expungement of his dismissed disciplinary charges from his prison records, plaintiff is not entitled to relief. Plaintiff claims that prison officials have made decisions regarding potential transfers and work assignments based upon the dismissed charges recorded in his prison record. Plaintiff, however, does not have a constitutional right to choose his place of incarceration or to a work assignment. See, O'Bar v. Pinion, 953 F.2d 74, 82–84 (4th Cir. 1991); Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995) ("Courts of appeals consistently have held that an inmate's expectation of keeping a specific prison job, or any job, does not implicate a protected property interest."); Meachum v. Fanno, 427 U.S. 215, 225 (1976). Thus, plaintiff fails to establish a due process violation.

16

To the extent plaintiff asserts a constitutional claim arising out of prison officials' alleged failure to follow policy, a claim that prison officials have not followed their own policies or procedures does not amount to a constitutional violation. See, Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir.1990); see also, Carver v. Lane, No. 5:14-CV-164, 2015 WL 9077032, at *4, n.2 (N.D.W. Va. Dec. 16, 2015). Thus, plaintiff failed to establish a due process violation.

Lastly, to the extent plaintiff asserts that there was insufficient evidence to support his April 26, 2011, March 7, 2012, October 2, 2012, and January 22, 2013, disciplinary convictions, the record establishes "some evidence" was presented to find plaintiff guilty of the offenses. (Exs D, F, G, I, p. 2.) Based upon the foregoing, plaintiff failed to establish a due process violation in the course of his disciplinary proceedings, and defendants' motion for summary judgment is GRANTED.

b.      Remaining Claims

Plaintiff alleges that his conditions of confinement while in segregation violated the Eighth Amendment. Specifically, plaintiff alleges that he was subjected to "freezing" temperatures, improper air ventilation, as well as urine and feces covered cell blocks. Plaintiff also states that each time he was transferred to administrative segregation, he was denied bed roll, hygiene items, clothes, personal property, and medication for a period of up to four days. The court must view the conditions of which plaintiff complains in their totality. See, e.g., Wilson v. Seiter, 501 U.S. 294, 304 (1991); Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991).

Defendants briefly address plaintiff's prison conditions claims in a conclusory fashion, and failed to provide any evidence in support their motion for summary judgment seeking judgment as a matter of law with respect to these claims. The court notes that defendants do reference a "Panter

17

Affidavit" in support of their motion for summary judgment as to plaintiff's prison conditions claims, but the affidavit is not named as an exhibit or attached to their motion for summary judgment. Thus, on this record, the court denies defendants' motion for summary judgment as to plaintiff's prison conditions claims.

Plaintiff also alleges that defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Specifically, plaintiff asserted in his pleadings that each time he was placed on administrative segregation, his HIV medication was confiscated and withheld for a period of up to four days. Plaintiff stated that as a result of such conduct, he has developed immunities to several medications used for his HIV therapy. Plaintiff also alleged that medical staff refused to see him while he was in segregation following his January 22, 2013, disciplinary conviction. Defendants have wholly failed to address these claims in their motion for summary judgment.

B.      Motion for a Settlement Conference

Plaintiff requests that the court refer this action for alternative dispute resolution. This case does not properly fall within a category of case automatically to be selected for mediation pursuant to this court's Local Civil Rule 101.1a(b). In the event the parties agree to mediation following the resolution of any forthcoming dispositive motions addressing the claims remaining in this action, the court will address the issue at that time. Thus, plaintiff's motion is DENIED.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment (DE 62) is GRANTED IN PART AND DENIED IN PART. Defendants' motion is GRANTED as to plaintiff's due process claims arising out of his disciplinary convictions; however, because the issues of deliberate

18

indifference to plaintiff's serious medical needs and prison conditions claims were not adequately briefed, summary judgment as to these claims is DENIED without prejudice. Accordingly, the court permits the parties **60 days** from the date of this court's order to file dispositive motions addressing the remaining issues. Plaintiff's motion for a settlement conference (DE 72) is DENIED.

SO ORDERED, this the 3rd day of March, 2016.

LOUISE W. FLANAGAN
United States District Judge